In the Matter of the Estate of EDWARD R. SENN, Deceased.

Surrogate's Court, New York County, October 19, 1933.

*Lynn, Wandless & Lanier* [*Edgar G. Wandless* of counsel], for the petitioner, Anna J. Senn.

*William Pinkney Hamilton, Jr.,* for the administrator c. t. a.

DELEHANTY, S.   A motor vehicle owned by deceased was at the time of his death subject to a chattel mortgage and at the hazard of seizure by reason of defaults suffered by him.   The vehicle was appraised at $600 and later sold at that price with the consent of the mortgagee who satisfied his mortgage on receiving $300 of the purchase price.   The net balance received by the estate is now claimed by the widow of deceased under subdivision 3 of section 200 of the Surrogate's Court Act.   If she was entitled to the vehicle she may claim the proceeds by virtue of section 201 of the Surrogate's Court Act.

Subdivision 3 of section 200 of the Surrogate's Court Act provides that domestic animals, with their necessary food for sixty days, the farm machinery, and one motor vehicle or tractor, not exceeding in value $450, shall not be deemed assets of deceased, but shall be set off for the benefit of the family of deceased.   Later in section 200 of the Surrogate's Court Act it is provided that " no allowance shall be made in money or other property under subdivisions one, two and three if the articles mentioned therein do not exist."

The instant application presents the question whether the right of setoff relied upon by petitioner applies to a motor vehicle which is worth more than $450 but which is subject to a specific lien in amount sufficient to reduce the net worth to the estate below $450.   On principle, the answer must be no.   The section contemplates the existence among deceased's assets of tangible personal property of a specified kind having the limited value fixed by

subdivision 3. Though its text is perfectly plain, all argument respecting its meaning is removed by the later provision that no substitute allowance for such property is to be made in money. The sole inquiry here is whether deceased left a motor vehicle worth $450 or less. The conceded facts establish that he did not. His only motor vehicle was one worth $600. That vehicle is not within the terms of the statute. The fact that the estate realized net only $300 does not change the basic fact that the vehicle was itself worth $600. Petitioner may not evade nor enlarge the statute by saying that she is asking only for the equity in the car. The statute deals with tangible personal property not with equities.

If the position taken by the petitioner is sound, it would apply equally to any article of the specified class, no matter how valuable, if only the charges against the article reduced the equity therein to $450 or less. The statute contemplates the immediate protection of the family of deceased and the retention by the family of household goods, domestic animals, domestic equipment and a small amount of money so as to enable the family unit to retain cohesion and to subsist. The right to possession of articles coming within the terms of the statute is an immediate right of possession, intended to serve an immediate need for family subsistence. It cannot be thought that the statute was intended to give the family the right to demand possession of valuable property of the listed kind against which large claims existed even though the net worth after the claims were paid might be less than the statutory limit of value. If the rule contended for were sound an estate in particular instances would be exposed to great hazard. While the estate has possession of an article and title to it, it can use the article to liquidate the debt and thus avoid collection out of other assets of the estate of the claim against the article in question. If perforce of the provisions of the statute both title and right of possession pass out of the estate, loss to the estate would almost certainly supervene. Especially would this be true in the case of so mobile a vehicle as a motor car. An instant of recklessness on the part of a member of the family to whom delivery might be made could cause destruction of the vehicle and leave the estate with the burden of paying the debt with nothing tangible to which it could resort. The statute was not intended to involve an estate in such hazards nor in the controversies likely to arise therefrom. It is simple in its terms and simple in its application if confined to the direct and plain meaning of the language used. So confined, it requires denial of this application.

Some notice should be taken of *Matter of Blowstein* (147 Misc. 870). In that case the motor vehicle had an appraised value

of only $300 and hence was within the money limit of subdivision 3 of section 200 of the Surrogate's Court Act. A son of deceased claimed it under the setoff provisions. It was stored by deceased in a garage and charges had accrued for repair and storage antecedent death as well as for storage after death. In directing delivery of the vehicle to the son, the court held the son liable for the charges accruing after the death of the father but said that the charges accruing prior to the death were a liability of the estate and, if paid by the son, would give rise to a claim in behalf of the son against the estate for the amount paid in securing possession of the article. It is not necessary here to consider the soundness of this result. If sound in its treatment of the lien liability the rule of the cited case would mean that in the instant case the widow might take the motor vehicle, pay the balance due on the chattel mortgage, recover the amount so paid from the general assets of the estate and thereby have in her possession without cost a motor vehicle of the value of $600. Such result would contravene the express terms of the statute. It would seem the sounder view that an article owned by deceased and subject at his death to a specific lien must, if demanded as property to be set off, be accepted upon such terms as in each particular case will assure against the collection out of the general assets of the estate of any amount for which the article had theretofore been security. Of course, no provision of the statute nor demand of the family could destroy the lien on the property. In administering the subdivision, the estate of deceased should be guarded against increase in claims against the general assets. This seems to be the only rule consonant with the spirit of the statute. As heretofore stated, that issue does not arise in the instant case because the article in question exceeds the value fixed by subdivision 3 of section 200 of the Surrogate's Court Act.

Submit on notice order denying the application.